THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PABLO FÉLIX MORALES, Defendant and Appellant.

No. 15857.   Argued April 1, 1955.—Decided August 9, 1956.

---

*F. Pérez Rejis*, Public Defender, for appellant. *J. B. Fernández Badillo, Acting Attorney General,* and *Rafael L. Ydrach Yordán* and *Ramón Olivo Nieves, Fiscal* and *Special Fiscal, of the Supreme Court,* respectively, for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The appellant was accused jointly with another person of a violation of Act No. 147 of April 26, 1951, because ". . . on or about April 1, 1953, and in the municipal jail of Juana Díaz, Puerto Rico, within the Superior Court of Puerto Rico, Ponce Part, then and there, unlawfully, wilfully and criminally, acting of mutual accord they agreed to, and did introduce, into the municipal jail of Juana Díaz, Puerto Rico, where there were several prisoners who had been lawfully committed by the District Judge Herminia Tormes, a certain amount of alcoholic and intoxicating beverage (cane rum), which was received by the defendant Pablo Félix Morales, known as Macario, who there and then (was) one of the aforementioned prisoners and he kept it under his immediate

possession within the municipal jail *for the purpose of circulating and offering it to other prisoners who were committed in jail. . . .*"

Act No. 147 of April 26, 1951, insofar as pertinent provides: "Every person who, in violation of the law, sells or helps to sell or *circulate*, or who attempts to introduce, sell, or *circulate*, or who introduces, sells or *circulates*, drugs, narcotics or stupefacients, weapons of any kind, razors or razor blades, *alcoholic or intoxicating beverages*, explosives, projectiles, or any other smuggled goods or thing, or any smuggled letter or message, to a prisoner in a penal institution, prison or jail in Puerto Rico, or in the premises thereof, shall be guilty of a felony. . . ."

As may be seen, the offense has several modalities: (1) to introduce, (2) to sell, or (3) to *circulate* any of the forbidden objects or substances.

The case was heard before a jury and the appellant was found guilty and subsequently sentenced for that offense. On appeal, he assigns the following errors: (1) the court erred in admitting the amended information and trying defendants for the facts alleged in that amended information; (2) the court erred in transmitting the instructions to the jury; (3) the court erred in weighing the evidence.

As to the first error relating to the admission of the amended information, the record reveals the following facts: the original information was filed on April 17, 1953, and appellant was arraigned on May 21, 1953, on which occasion appellant pleaded not guilty; the amended information was filed on August 20, 1953, and appellant was arraigned on August 27, 1953, when he again pleaded not guilty and moved for a trial by jury. The trial was set for October 22, 1953, and it was at that trial where for the first time appellant raised the question that the second amended information had been filed without the court's authorization after the appellant had pleaded not guilty to the first information.

The record further discloses that at the arraignment on the amended information on August 27, 1953, when the trial judge realized that it had a different number from that of the original information, "he ordered the elimination of the number given in the office of the clerk to the amended information and that it be attached to this record," (J. R. 6). It is unquestionable that the court knew, from the date of the arraignment on the amended information, that an amended information had been filed, since it ordered that such information be filed under the same number as the original information. It is likewise unquestionable that from that same date the appellant knew that a second amended information, charging a subsequent offense, had been filed against him. At the second arraignment, appellant's counsel did not object to the presentation and reading of the amended information to his client.

The Code of Criminal Procedure of Puerto Rico does not contain a typical proceeding to amend an information except in the case of an authorized amendment in sustaining a demurrer. At times, in allowing amendments to an information which has not been demurred to, we have availed ourselves of the provisions of § 158 of that Code which provides: "If the court does not permit the information to be amended, nor direct that an information be filed, the defendant, if in custody, must be discharged. . . ." In the case of *People* v. *Calero*, 68 P.R.R. 295, 304 (De Jesús) (1948) we held that the "mere permission" of the court is enough to amend an information already filed.

Since Puerto Rico does not possess a grand jury system (indictment), and the accused is prosecuted on information filed by the prosecuting attorney, the problem of allowing amendments to an information on leave of court is not clothed with the gravity of a case where the indictment must be presented by a grand jury: "Annotation on the power of court to amend indictment." 7 A.L.R. 1516; supplementary

annotation on the same subject in 68 A.L.R. 928. When a grand jury has the power to indict, the court must not usurp that power and by virtue of an amendment permit one offense to be substituted for another, even though the court has power to amend the indictment to correct errors in matters of form.

When, as in Puerto Rico, the prosecuting attorney has the power to file an information, the court may allow an amendment of substance in an information, provided it is done before the trial and the accused is again arraigned and given an opportunity to plead against the amended information: 27 Am. Jur. 680, § 121; State v. Hartung, 30 N. W. 2d 491, 496 (Smith) (1948). During the trial the court is merely authorized to allow amendment of an information in defects of form (Section 83 of the Code of Criminal Procedure of Puerto Rico—34 L.P.R.A. § 138).

The amendment in this case consisted of adding to the original information certain offenses for which the defendant had served sentence. Undoubtedly, this is an amendment of substance and not of form—2 Wharton's Criminal Evidence 538, § 645 (12th Ed. of The Lawyers Co-operative Publishing Company of 1955). But in this case defendant was again arraigned and he pleaded not guilty, including the charge of subsequent offender. Any objection to the amendment should have been made prior to the corresponding plea at the second arraignment and not at the trial, as his failure to do so is considered a waiver. State v. District Court, 200 P. 2d 248, 249–50 (Angstam) (1948). Moreover, in the instant case, during the trial and before the discussion of the validity of the amendment was begun, the defendant admitted that he "had served other sentences" so as to avoid bringing the Warden of the Guayama jail to court (Tr. 1–2).

■ Concerning the previous permission of the court, although the judgment roll gives no version of the words spoken by the judge when defendant was arraigned a second time,

we find in the transcribed minutes of the session the order entered by the court correcting the error of separately numbering the amended information and ordering that the amended information be filed under the same number as the original information, from which it may be inferred that the court authorized the filing of the new information.

■■ As to the second error relating to the instructions to the jury, it refers to certain testimony given by one of the witnesses for the prosecution to the effect that a thermos bottle which he owned had been used to introduce the rum into the jail. According to that testimony, the appellant asked him for the thermos bottle and when he returned with the rum the appellant kept the bottle until he drank the rum. According to the testimony of a codefendant, who did not appeal from the sentence which he received in this same case, when he returned with the thermos bottle he gave it to the witness for the prosecution who kept it in his cell.

The status of accomplice of the witness for the prosecution depended on whether the jury regarded the testimony of the codefendant as credible. Whether or not a witness is an accomplice is a question for the determination of the jury when the evidence is capable of being determined either way, and justifies different inferences in respect of this complicity. 2 Wharton's Criminal Evidence 225, § 446 (cited edition).

In this case the trial judge gave an instruction in the alternative in the event that the jury believed the testimony of the co-defendant, to the effect that if it gave credit to co-defendant's testimony it had to regard the witness for the prosecution, who was the owner of the thermos bottle used to introduce the rum into the jail, as an accomplice whose testimony needed corroboration. That seems the rule of good practice in a case like this: Caljic—*California Jury Instructions* (West Publishing Co., 1946 ed.). The rest of the assignment lacks merit; the fact of describing the accomplice as a co-author offers sufficient information to the

jury on the criminal relation that must exist between the defendant and his accomplice. *People* v. *Díaz*, 67 P.R.R. 736, 738 (De Jesús) (1947) ; *People* v. *Villanueva*, 71 P.R.R. 858, 861 (Marrero) (1950). The rest of the assignment is without merit.

▇▇ As to the third error connected with the weighing of the evidence the appellant tries to convince us that the evidence for the prosecution was defeated by the evidence for the defense and that the latter is more worthy of credit than the evidence for the prosecution. The weighing of the evidence is one of the powers recognized to the jury. Our mission is to examine the evidence for the purpose of concluding whether there was sufficient evidence for conviction. We are agreed that there was such evidence in the case at bar.

The judgment appealed from will be affirmed.